J-A21011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: TERMINATION OF PARENTAL RIGHTS TO N.J.S., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.J.S., FATHER | : : : : : | |
| | : | No. 626 EDA 2021 |

Appeal from the Order Entered February 25, 2021,
in the Court of Common Pleas of Lehigh County,
Orphans' Court at No(s):  No. A2020-0018.

BEFORE:   KUNSELMAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:                    **FILED JANUARY 5, 2022**

In this matter, Appellant M.J.S. (Father) appeals from the order involuntarily terminating his rights to his three-year-old daughter, N.J.S. (the Child), pursuant to the Adoption Act. ***See*** 23 Pa.C.S.A. § 2511(a)(1), (8); (b).[1]  After careful review, we affirm.

The relevant factual and procedural history is as follows: The Lehigh County Office of Children and Youth Services (CYS) became involved with the family shortly after the Child's birth in August 2017; Mother had disclosed that she used cocaine a week before the Child was born.  However, the case did not become court-active until December 2018 when Mother was incarcerated.

---

[*] Former Justice specially assigned to the Superior Court.

[1] The orphans' court also terminated the rights of T.S.S. (Mother).  She did not appeal.

At the time, Father's whereabouts were unknown, and thus the Child was without parental care. The court granted CYS emergency custody, and the agency placed the Child with the Maternal Grandparents.[2]

On December 13, 2018, the court adjudicated the Child dependent, pursuant to the Juvenile Act. *See* 43 Pa.C.S.A. § 6302. Father stipulated to the dependency adjudication because he was homeless. The dependency court ordered Father to achieve certain goals to aid reunification. Specifically, Father was ordered to: 1) obtain and maintain appropriate housing and legal income; 2) submit to urinalysis to demonstrate sobriety; 3) continue with mental health treatment; and 4) attend visitation. These benchmarks remained unchanged through the dependency litigation.

The dependency litigation consisted of four permanency review hearings between February 2019 and August 2020. After each review, the dependency court determined Father made minimal progress toward alleviating the circumstances that necessitated the Child's removal and subsequent placement with the Maternal Grandparents. In February 2020, CYS filed a petition to involuntarily terminate Father's rights. The orphans' court held a hearing on January 11, 2021. Importantly, Father did not appear. The court

---

[2] The Child resided with the Maternal Grandparents for virtually all of her life. From her birth in August 2017 until October 2018, the Child and Mother stayed with the Maternal Grandparents. In October 2018, Mother secured housing through the Salvation Army. Mother and the Child were together from October 2018 until Mother's incarceration in December 2018.

subsequently granted the petition, and Father timely-filed this appeal. He presents the following issues for our review:

1. Did the orphans' court abuse its discretion when it found by clear and convincing evidence that Father by conduct continuing for a period of at least six months immediately preceding the filing of the petition to terminate parental rights had evidenced a settled purpose of relinquishing his parental claim to the Child or had refused or failed to perform his parental duties?

2. Did the orphans' court abuse its discretion when it found by clear and convincing evidence that the conditions which led to the removal or placement of the Child continued to exist and that termination of parental rights would best serve the needs and welfare of the Child?

3. Did the orphans' court abuse its discretion when it found by clear and convincing evidence that CYS had satisfied its burden of proof as to 23 Pa.C.S.A. § 2511(b); that the termination of parental rights best serves the needs and welfare of the Child?

Father's Brief at 5 (style adjusted).

We review these issues mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

- 3 -

***In re T.S.M.***, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to section 2511(b): determination of the needs and welfare of the child[.]

***In re C.M.K.***, 203 A.3d 258, 261-262 (Pa. Super. 2019) (citation omitted).

Instantly, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(1), (8), and (b). We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Moreover, we may uphold a termination decision if any proper basis exists for the result reached. ***In re C.S.***, 761 A.2d 1197, 1201 (Pa. Super. 2000) (*en banc*).

Father's first and second appellate issues correspond with the respective grounds for termination under Section 2511(a)(1) and (8). His third appellate issue concerns the second prong of the bifurcated termination analysis, Section 2511(b). We begin our discussion with a review of the first prong of the termination analysis under Section 2511(a):

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either had evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

***

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S.A. § 2511(a)(1), (8).

As we need only to agree with the trial court as to one subsection of Section 2511(a), we analyze whether CYS properly established grounds under Section 2511(a)(1). Termination under Section 2511(a)(1) will be warranted if Father has either evidenced a settled purpose of relinquishing his parental claim, or if Father has refused or failed to perform parental duties. Under either event, Father's offending conduct must have been continuing for a period of at least six months immediately preceding the filing of the termination petition. ***See id.***

Here, the petition was filed in February 2020, thus the statutory timeframe began in August 2019. We have clarified, however, that "[a]lthough the six-month period immediately preceding the filing of the petition is most critical to the analysis, the court must consider the whole

history of the case and not mechanically apply the six-month provision." *In re I.J.*, 972 A.2d 5, 10 (Pa. Super. 2009) (citation omitted). "The trial court must examine the individual circumstances of each case and consider all of the explanations of the parent to decide if the evidence, under the totality of the circumstances, requires involuntary termination." *In re B., N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004), *appeal denied*, 872 A.2d 1200 (Pa. 2005).

Instantly, Father contests the court's termination under Section 2511(a)(1) by citing his substantial compliance with the reunification plan. He explains that termination was unwarranted, because his substantial compliance evidenced his genuine effort to reunify with the Child – not "a settled purpose of relinquishing [his] parental claim." *See generally* Father's Brief at 13-16. He also cites his compliance to refute the court's finding that he refused or failed to perform parental duties. *Id.*

Father argues the following facts demonstrated his substantial compliance. First, the CYS caseworker testified that Father obtained suitable housing.[3] Second, it was also undisputed that Father has obtained legal income; Father receives SSI benefits, because he is legally blind.[4] Third, the caseworker testified that, although Father consumes marijuana, it was not a

---

[3] Although we review the court's determination under Section 2511(a)(1), we note that Father's Section 2511(a)(8) argument is rooted in the fact that he obtained housing; thus, he argues, he remedied the only condition which led to the Child's removal from his legal care. *See generally* Father's Brief 16-21.

[4] Father is so impaired that he requires care 56 hours per week, and he is unable to cook food for himself.

J-A21011-21

significant concern for the agency, as it did not seem to impact his functioning.[5] Lastly, Father argues he visited the Child consistently, but to the extent he did not, the fault should be borne by CYS – for not scheduling visitations closer to his home and by the Maternal Grandparents – with whom Father's relationship soured.

Taken together, Father analogizes these facts with those in **In re I.J.**, **supra**, and **In re Adoption of G.L.L.**, 124 A.3d 344 (Pa. Super. 2015). Father's reliance on these cases, however, is ultimately misplaced. In **G.L.L.**, the local children, youth and families agency sought to terminate a mother's rights under, **inter alia**, Section 2511(a)(1); naturally, the agency also had to prove termination served the child's needs and welfare under Section 2511(b). The orphans' court denied the agency's petition under Section 2511(b). The agency appealed, and we affirmed. **G.L.L.** is inapposite from this matter, because that case only involved the second prong of the termination analysis under Section 2511(b). In fact, although we affirmed the orphans' court denial of the agency's petition under Section 2511(b), we rebuked the orphans' court for not first reaching a determination under Section 2511(a). **See G.L.L.**, 124 A.3d at 345 n.2 (citing **In re C.M.S.,** 884 A.2d 1284, 1286-87 (Pa. Super. 2005) ("Only **after** determining that a parent's conduct warrants termination of his or her parental rights under

_____

[5] It was unclear whether Father's consumption was medical or illicit, or how often Father partook. The caseworker testified that Father attended drug screenings in a "fairly consistent manner," and had tested positive for marijuana at some point.

- 7 -

Section 2511(a) must the court engage in the second part of the analysis, determination of the needs and welfare of the child, under Section 2511(b)." (emphasis original). Put plainly, neither the orphans' court nor this Court made any conclusions regarding the parent's compliance as it related to Section 2511(a)(1).

Father's reliance on *In re I.J.*, though comparatively more on point, is also misplaced. In *I.J.*, like in *G.L.L.*, the agency appealed the lower court's denial of its termination petition. This time, however, we reversed the court's denial, because the court neglected to conduct a "best interests" analysis under Section 2511(a)(8) and (b). *See I.J.*, 972 A.2d at 12-13. But in *dicta*, we recognized the lower court's determination that the agency failed to meet its burden under Section 2511(a)(1). We noted that the father attended visitations, sought medical and mental health treatment, and found employment and housing. *Id.* at 10.

Nonetheless, *I.J.* is not factually similar to the instant case. Here, Father did not appear to testify at the termination hearing. While this does not mean CYS was entitled to a default judgment – as petitioner, CYS still bore the burden of proof – we must recognize that the testimony at the termination hearing was essentially uncontested, save for cross-examination of witnesses by Father's counsel.

At the hearing, the caseworker acknowledged that Father has "made strides," but she testified that Father still had not demonstrated a commitment to the Child. *See* N.T., 1/11/21, at 16. Father was content to occasionally

visit Child, but did not undertake the responsibility of parenthood. When asked if Father presented himself as a resource for the Child, the caseworker testified: "That's a hard question to answer. He has not indicated that he was willing to voluntarily relinquish his rights, but his actions make – may question his commitment to his child." *Id.* at 17. The orphans' court clearly placed considerable weight on this testimony. *See* Trial Court Opinion (T.C.O.), 4/15/21 at 4-5.

After review, we conclude the record supports the court's determination. For instance, Father only attended two of the four permanency review hearings. After each review, the court concluded Father made minimal progress. Indeed, the court ordered Father to participate in a parenting program through Abraxas, a service provider. The parenting program ended unsuccessfully after Father's refused to participate, even though Abraxas tried to accommodate him. *See id.* at 42-43. Similarly, Father was advised that he could visit the Child daily at Safe Start, a therapeutic day program for children who have been "drug impacted" while in utero. *Id.* at 7. But Father did not attend once.

Regarding visitation, Father's progress with this goal was not as significant as he claims. Initially, the visits were arranged privately between Father and the Maternal Grandparents. The frequency of those visits is unknown, but apparently the relationship between the Maternal Grandparents and Father deteriorated to the point where CYS had to take over the arrangement. The source of the conflict appears to have been Father's

- 9 -

fluctuating sobriety. *See id.* at 28, 34. CYS began arranging the visits at a neutral location, the Comfort Cottage, in July 2020. Since then, Father visited Child only 40% of the time, and he often failed to appear despite confirming his attendance the day before. Father could have also telephoned the Child to increase his contact, but he never did. *Id.* at 39.

On appeal, Father claims CYS did not accommodate him. He argues CYS should have arranged for the visitations to be closer to his home in the center city area. *See* Father's Brief at 14. But due to the Covid-19 pandemic, the visits had to be arranged at the Comfort Cottage instead of the government center in downtown Allentown. Neither Father, nor his caretaker could drive, so CYS provided Father with bus passes; there was a bus stop within walking distance of the Comfort Cottage.

Father also cites his request for more visitation as evidence that he did not evince a settled purpose to relinquish his parental claim. Although, Father requested more visitation in August 2020, the dependency court denied his request, because he was not utilizing the visits that were already scheduled.

In light of these facts, we agree that Father has failed to perform his parental duties. Our Supreme Court has defined parental duty as follows:

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.

- 10 -

> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life'.

*B., N.M.,* 856 A.2d at 855 (citing *In re Burns*, 379 A.2d 535 (Pa. 1977) and

*In re: G.P.-R.,* 851 A.2d 967, 976 (Pa. 2004)) (internal citation omitted)).

Moreover, we have explained:

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*Id.* (internal citations omitted).

A parent is not required to do the impossible, of course. We have held that even an incarcerated parent can defeat a Section 2511(a)(1) petition, if it is shown that the parent has utilized all available resources while in prison to maintain a relationship with the child. *See, e.g., In re Adoption of Dale A., II,* 683 A.2d 297, 302 (Pa. Super. 1997).

Here, however, the orphans' court determined Father did not fulfill his parental duties, as he did not make sufficient efforts to maintain contact with

the Child. The court noted that Father never sought to have telephone contact with the Child. Although the Child was quite young through the pendency of the litigation, the court determined Father could have – but did not – utilize phone calls to create some sort of ongoing familiarity. Similarly, Father refused to participate in the Abraxas program, just as he chose not to participate in Child's early intervention care at Safe Start, which was critical for the Child's development. While visitations at the Comfort Cottage were logistically inconvenient, they were not impossible. Notwithstanding Father's argument to the contrary, CYS did accommodate Father by offering him bus passes.[6] At the hearing, Father's counsel took the position that Father was only recently able to utilize the aide. That may be, but as our law makes clear, parental rights are not preserved by waiting for a more suitable or convenient time to perform one's responsibilities. ***B., N.M., supra***.

Therefore, we conclude the orphans' court did not err or abuse its discretion when it determined CYS met its burden under Section 2511(a)(1). Father simply refused to perform his parental duties. Given this disposition, we need not address Father's second appellate issue – whether termination was warranted under Section 2511(a)(8).

---

[6] We note that, at a termination hearing, an orphans' court is not required to consider an agency's "reasonable efforts" to aid reunification; although, the lack of reasonable efforts may be relevant. ***See In re C.D.C.***, 105 A.3d 662, 672 (Pa. 2014). Here, it appears CYS provided reasonable efforts. CYS had to schedule visits at the Comfort Cottage due to its Covid-19 protocol. Visitations at its facility downtown would have been much more convenient for Father, but that was unfortunately not an option. To accommodate Father, CYS offered him bus passes.

We turn now to Father's third appellate issue, which concerns the second prong of the termination analysis. Father argues the orphans' court erred or abused its discretion when it determined that termination would best serve the Child's needs and welfare under Section 2511(b). Section 2511(b) provides:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(b).

This Court has explained that:

> [S]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.,* 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

- 13 -

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Concerning the bond, the question is not merely whether a bond exists, but whether termination would destroy this existing, necessary and beneficial relationship. *See C.M.K.*, 203 A.2d at 264 (citation omitted); *see also K.Z.S.*, 946 A.2d at 764 (holding there was no bond worth preserving where the child had been in foster care for most of the child's life, which caused the resulting bond to be too attenuated). We add, the court is not required to use expert testimony to resolve the bond analysis but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Finally, we emphasize that "[w]hile a parent's emotional bond with his and/or her child is a major aspect of the Section 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child." *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011) (citation omitted).

Instantly, the orphans' court determined:

> Although the [CYS caseworker] had not personally observed interactions between Father and [the Child], given [the Child's] very young age, the nearly life-long absence of her Father from her day-to-day life, and the absence of any evidence of a bond between [the Child] and Father, it appears no bond exists between Father and [the Child]. Further, if there is any bond at all between [the Child] and Father, the bond she has with [the Maternal Grandparents] is the bond worth preserving. Additional, to the extent that [the Child] may have any bond with Father, the Maternal Grandparents' willingness to allow Father to remain a part of [the Child's] life, provided he is sober and of sound mind, should ameliorate any potential negative effect [the Child]

- 14 -

might experience from ending whatever relationship she may have with Father.

T.C.O. at 8-9 (citations omitted).

On appeal, Father argues the court resorted to erroneous speculation, because there was no evidence of a bond. *See generally* Father's Brief at 21-23; *see also* Father's Brief at 20. After review, we discern no error or abuse of discretion.

As mentioned above, when the record is devoid of evidence between the parent and the child, it is reasonable to infer none exists. *In re K.Z.S.*, *supra*. In this case, such an inference is warranted. The Child was three-and-a-half years old at the time of the termination hearing, and she has spent all but two months of her life with her Maternal Grandparents.[7] Maternal Grandparents provided the day-in-day-out parental care and ensured the Child received the necessary therapeutic intervention at Safe Start. Moreover, the caseworker described the Child's attachment to the Maternal Grandparents as "strong." *See* N.T., at 19. "[The Child] looks to them for guidance, for support. She – it's a very close, close connection. In my opinion, she views them as her parents." *Id.* Given the caseworker's testimony, the amount of time the Child has spent outside of Father's care, Father's decision not to participate in the Child's development, and the dearth of mitigating testimony due to Father's

---

[7] The Child was living with her Maternal Grandparents before her dependency adjudication. Since the adjudication, the Child has been without Father's parental care for approximately 25 months.

failure to attend the hearing, we conclude the court's determinations under Section 2511(b) are supported by the record.

In sum:  the orphans' court did not err or abuse its discretion when it concluded CYS met its burden of proof that termination of Father's rights was warranted under Section 2511(a)(1).  Father has refused or failed to perform his parental duties throughout the pendency of this case, as evidenced by his refusal to utilize all available resources to maintain contact with Child, or to exert himself to maintain a place of importance in Child's life.  Given this conclusion, we need not address Father's second issue – whether Father's appropriate housing remedied the conditions leading to the Child's removal from his care. **See** 23 Pa.C.S.A. § 2511(a)(8).  Finally, we discern no abuse of discretion nor error of law when the court determined termination would best serve the Child's needs and welfare, pursuant to Section 2511(b).  The orphans' court made a reasonable inference, supported by the record, that no worthwhile bond between Father and the Child exists.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/05/2022

- 16 -